[Cite as *State v. Williams*, 2021-Ohio-1256.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-A-0033** |
| CHRISTOPHER DONTEZ WILLIAMS a.k.a. CHRISTOPHER DONTEZ CURTIS WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2018 CR 00636.

Judgment: Affirmed.

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Prosecutor's Office, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Adam M. Van Ho*, 243 Furnace Street, Suite 201, Akron, OH 44304 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Christopher Dontez Williams, appeals from his convictions for Robbery and Improperly Handling Firearms in a Motor Vehicle, following a jury trial in the Ashtabula County Court of Common Pleas. For the following reasons, we affirm the decision of the lower court.

{¶2} On October 24, 2018, the Ashtabula County Grand Jury issued an

Indictment, charging Williams with Robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2); Improperly Handling Firearms in a Motor Vehicle, a felony of the fourth degree, in violation of R.C 2923.16(B); and two counts of Petty Theft, misdemeanors of the first degree, in violation of R.C. 2913.02(A)(1).

{¶3} A trial was held on March 11-12, 2019. The following pertinent testimony and evidence were presented:

{¶4} On September 14, 2018, Michael Tran was working as manager at Grumpy Grandpa's in Ashtabula, which is owned by his father, Chinh Tran. The store sells groceries and alcohol. According to Tran, around 7:30 p.m., he noticed some liquor bottles missing from a shelf. He reviewed the security camera footage and saw a group of three individuals, including Williams, stealing alcohol worth approximately $95. Tran called the police, who responded and took a statement.

{¶5} Shortly after the officer left, around 9 p.m., Williams and a female who committed the prior theft returned to the store. Tran asked that they leave due to the prior theft and they did not respond. He again asked them to leave and Williams said "he gonna come in and take whatever he want." According to Tran, Williams then pushed him out of the way and began taking bottles of alcohol. After Williams took a bottle of Hennessy, which was described as "half a gallon" and really large, Williams "threatened to hit [him] with it." Williams pushed Tran out of the way again and took more alcohol, which totaled $400, before leaving. The surveillance video depicts Williams and his accomplice entering an aisle and taking alcohol off of the shelf, with Tran subsequently running toward them. Tran began trying to retrieve alcohol from the pair and a brief conversation between Tran and Williams occurred. There then appeared to be some

2

physical contact between the men, with Williams raising his arm in an upward motion toward Tran's chest and shoulder area, although the specific contact made is unclear due to the angle of the video and the position of the men. Williams took additional alcohol, which Tran again tried to remove from his hands before Tran's father pulled him away. When Williams and the woman exited, Tran observed the red car they were in and a cashier called the police. Tran described the car to the responding officer who then left the scene. Tran testified that he took Williams' statement that he would hit Tran seriously and was in fear for his safety and the safety of his employees.

{¶6} Deputy James Lewis of the Ashtabula County Deputy Sherriff's Department was dispatched to Grumpy Grandpa's to respond to the theft complaint. Shortly after he left, at around 9 p.m., he returned to respond to a complaint of a "fight" occurring there. After speaking with Tran and his father who gave a description of a red car, Lewis left to search for the vehicle. He located a maroon four-door Saturn that matched the provided description. He and several other officers pursued it for approximately 22 minutes. The vehicle ultimately drove into the back yard of a residence where it came to a stop. Williams exited the vehicle, where he had been sitting in the passenger side rear seat, ran into a field, and was arrested. There were four individuals in the vehicle when it was stopped and both the driver and Williams ran from the vehicle.

{¶7} Lewis testified that a search of the car recovered, inter alia, several liquor bottles and a loaded handgun in the center console area that he described as accessible to all four individuals within the vehicle. Sergeant Brian Rose, who searched and photographed the interior of the car, testified that when he "got up to the car and started looking at the car, [he] observed the pistol that was in the car." Rose described the gun

3

as being "beside the driver's seat between the console and driver's seat." The handgun was described as a Taurus Millennium G2 9mm. The photographs of the interior of the vehicle show the gun located between the driver's seat and front passenger seat, in front of the center armrest area and visible when looking into the front seat area from the driver's side door. Sergeant Rose clarified that the firearm was accessible to "everybody in the car" and that the car was "small" with bucket seats.

{¶8} The jury found Williams guilty of all four counts as charged in the Indictment. The verdict was memorialized in a March 15, 2019 Judgment Entry.

{¶9} A sentencing hearing was held on July 20, 2020, and the sentence was memorialized in a July 23, 2020 Judgment Entry of Sentence. The court sentenced Williams to serve a prison term of five years for Robbery, 18 months for Improperly Handing Firearms in a Motor Vehicle, and six months for each count of Petty Theft. They were ordered to be served concurrently.

{¶10} Williams timely appeals and raises the following assignments of error:

{¶11} "[1.] Appellant's conviction for robbery, in violation of Section 2911.02(A)(2) of the Ohio Revised Code, is unconstitutional as it is against the manifest weight of the evidence and is based upon insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

{¶12} "[2.] Appellant's conviction for improper handling of a firearm in a motor vehicle, in violation of Section 2923.16(B) of the Ohio [Revised Code], is unconstitutional as it is against the manifest weight of the evidence and is based upon insufficient evidence, in violation of the Fifth and Fourteenth Amendments to the United States

4

Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

{¶13} "[3.] The trial court erred * * * in failing to grant appellant's Criminal Rule 29 motion for a judgment of acquittal on the charges of robbery and improperly handling a firearm in a motor vehicle following the conclusion of the state's case.

{¶14} "[4.] Appellant was deprived of the effective assistance of counsel at trial, in violation of Strickland v. Washington, the Sixth and Fourteenth Amendments of the United States Constitution, and Article One, Section Ten of the Ohio Constitution."

{¶15} In his first assignment of error, Williams argues that his conviction for Robbery was against the weight and sufficiency of the evidence because the State failed to prove that he inflicted, attempted to inflict, or threatened to inflict physical harm on Tran.

{¶16} Crim.R. 29(A) provides, in pertinent part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶17} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence

5

is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶18} To be convicted of Robbery, the State was required to prove, beyond a reasonable doubt, that Williams did, "in attempting or committing a theft offense or in fleeing immediately after the attempt or offense * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." R.C. 2911.02(A)(2). As Williams takes issue only with the element of inflicting, attempting to inflict, or threatening to inflict physical harm, we will address only that element.

{¶19} Williams contends that he used force when pushing Tran but this would only meet the elements of R.C. 2911.02(A)(3), which is a third-degree Robbery. However, as he subsequently recognizes, the conduct that justified the conviction under R.C 2911.02(A)(2) arises not from the pushing of Tran but from the threat to hit him with a bottle of alcohol. The uncontroverted testimony of Tran was that, while in the process of stealing alcohol from the store, Williams verbally threatened to hit him with a large bottle of alcohol, which could pose a danger to Tran and which has been construed as a deadly weapon. *See State v. West*, 8th Dist. Cuyahoga No. 101133, 2014-Ohio-5143, ¶ 22. This

6

provides evidence sufficient to prove the element of "threatening to inflict physical harm on another" and, since there is no evidence refuting this testimony, supports such a finding by the manifest weight of the evidence. The jury, as the finder of fact, could best determine Tran's credibility regarding his description of the events that occurred. *State v. Rice*, 11th Dist. Lake Nos. 2018-L-065 and 2018-L-066, 2019-Ohio-1415, ¶ 84 ("[i]t is well settled that when assessing the credibility of witnesses, '[t]he choice between the credibility of witnesses * * * rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact'") (citation omitted).

{¶20} Williams contends that "there was no description of how he threatened to hit [Tran] with" the bottle. Tran testified about the circumstances which gave rise to the threat, stated the threat, and explained that the threat made him concerned for the safety of himself and his employees. The surveillance video, because it did not have sound, could not confirm the verbal threat, but was consistent with Tran's description of the events. The video evidence in conjunction with Tran's testimony supported the offense of Robbery for which Williams was convicted.

{¶21} The first assignment of error is without merit.

{¶22} In his second assignment of error, Williams argues that his conviction for Improperly Handling Firearms in a Motor Vehicle was against the weight and sufficiency of the evidence, emphasizing that there was a lack of information about when and how the firearm was placed in the area where it was discovered by police and no evidence that Williams was "knowingly" transporting or had the firearm in the vehicle.

{¶23} To obtain a conviction for Improperly Handling Firearms in a Motor Vehicle, the State was required to prove, beyond a reasonable doubt, that Williams did "knowingly

transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶24} Here, there is no question that a loaded firearm was located by police in the center console area of the vehicle in which Williams was a passenger, and that, pursuant to officer testimony, it would have been accessible to Williams. The critical questions here are whether Williams did transport or have a loaded firearm in a motor vehicle and whether he "knowingly" did so.

{¶25} "In order to 'have' a weapon, one must either actually or constructively possess it." *State v. Burgess*, 11th Dist. Lake No. 2002-L-019, 2004-Ohio-3338, ¶ 40. Since the firearm was not recovered in Williams' actual possession, the State was required to prove constructive possession. "'Constructive possession exists when an individual exercises dominion and control over an object,' and 'the person [is] conscious of the presence of the object.'" *State v. Mattocks*, 2020-Ohio-3858, 156 N.E.3d 946, ¶ 23 (11th Dist.), citing *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). "Circumstantial evidence alone is sufficient to support the element of constructive possession." *State v. Campbell*, 11th Dist. Ashtabula No. 2014-A-0005, 2014-Ohio-4305, ¶ 23.

{¶26} There was testimony that Williams was able to reach the weapon from his position in the back passenger seat of the vehicle, i.e., that it was accessible to him and was in his presence. This court has held that "the presence of a firearm in the same area of the defendant without more is insufficient to support an inference of constructive

8

possession." *State v. Dickerson*, 11th Dist. Ashtabula No. 2013-A-0046, 2015-Ohio-938, ¶ 37, citing *State v. Teague*, 11th Dist. Trumbull No. 2011-T-0012, 2012-Ohio-983, ¶ 57 (noting the state's acknowledgement that "it was required to prove that appellant had the ability to exercise dominion and control over the firearms *and* that he was aware they were in the van") (emphasis added). *See also State v. Walker*, 8th Dist. Cuyahoga No. 106378, 2018-Ohio-3588, ¶ 9 ("mere presence in an area where a substance or object is located does not conclusively establish constructive possession" but constructive possession may be established when it is "coupled with another factor probative of dominion or control over the contraband") (citations omitted); *State v. Cooper*, 3d Dist. Marion No. 9-06-49, 2007-Ohio-4937, ¶ 26.

{¶27} In this matter, there is the presence of an additional factor that would support a finding that Williams was aware a firearm was in the vehicle, proving constructive possession and the knowledge element. The testimony and photographs showed that the firearm was in the center front portion of the vehicle, between the driver and front passenger seat, in a small car, was visible and was not hidden, as well as that there was movement in the rear seat during the chase; such evidence supports the jury's verdict. *See State v. Williams*, 11th Dist. Trumbull No. 2005-T-0123, 2006-Ohio-6689, ¶ 4-5, 34 ("[t]he jury was free to infer that Mr. Williams was aware that the pistol was protruding from beneath his front passenger seat, and thus, that he 'knowingly' had the weapon" where the firearm was partially visible and Williams had been seen leaning toward the passenger seat); *State v. Gaines*, 11th Dist. Trumbull No. 2015-T-0138, 2016-Ohio-5884, ¶ 39 (finding that a defendant's knowledge of a firearm's presence is "inferable from its visibility"); *also State v. Bartee,* 9th Dist. Summit No. 25266, 2010-Ohio-5982, ¶

9

19-20 (considering in favor of a finding of constructive possession that the gun was in "plain view"). There was no contradictory evidence presented to demonstrate a lack of knowledge of the firearm or to rebut the officers' testimony and the photographs showing the firearm was clearly visible and not hidden from view. Based on the facts presented to the jury, we cannot find that the jury lost its way or that its verdict was against the manifest weight of the evidence. It follows, then, that the conviction for Improperly Handling Firearms in a Motor Vehicle was also supported by sufficient evidence. *Arcaro*, 2013-Ohio-1842, at ¶ 32.

{¶28} As to Williams' argument that the evidence does not demonstrate when the firearm was placed where it was discovered by police, given the circumstances described, where the driver exited the car at the end of the chase and fled, the jury could have determined that the firearm was present prior to the end of the chase and with sufficient time for Williams to observe it. Although Williams notes the presence of others in the vehicle, the argument that there is insufficient evidence for gun possession charges because others in the vehicle also had access has been rejected. *Teague* at ¶ 54. Williams' argument that someone discarded the firearm after the crash could easily have been rejected by the jurors given the rush to exit the vehicle after the crash, the presence of multiple officers on the scene at the time the vehicle came to a stop, and the photograph showing the firearm in a manner that could be perceived as placed rather than rapidly discarded. There is no evidence to affirmatively demonstrate the firearm was discarded at the conclusion of the chase and this was something for the jury to weigh given all of the facts and circumstances.

{¶29} The second assignment of error is without merit.

{¶30} In his third assignment of error, Williams argues that there was insufficient evidence to submit the charges to the jury, that the court could have found there was "sufficient evidence to submit a count of third degree Robbery to the jury" and "even though the Court theorized that the Improper Handling charge could be predicated on an aiding and abetting theory, the Court did not provide a complicity instruction."

{¶31} "When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense." R.C. 2945.74; Crim.R. 31(C).

{¶32} An instruction on a lesser included offense must be given to the jury "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.'" *State v. Hall*, 11th Dist. Trumbull No. 2017-T-0032, 2019-Ohio-1719, ¶ 26, quoting *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus; *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 34 ("[t]he trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense").

{¶33} Where counsel does not object to the trial court's failure to instruct on a lesser included offense, the doctrine of plain error is applied. *State v. Jevnikar*, 11th Dist. Lake Nos. 2016-L-006 and 2016-L-007, 2016-Ohio-8113, ¶ 19; *State v. Ryan*, 2018-Ohio-2600, 115 N.E.3d 659, ¶ 109 (11th Dist.). "Plain error exists only where there is a deviation from a legal rule; the error constitutes an 'obvious' defect in the trial proceeding;

11

and the error affected a defendant's 'substantial rights.'" (Citation omitted.) *State v. LaChance*, 11th Dist. Portage No. 2014-P-0026, 2015-Ohio-2609, ¶ 20,

{¶34} "A robbery pursuant to R.C. [2911.02](A)(3) has been determined to be a lesser included offense of (A)(2) because the infliction, attempt to inflict or threat to inflict physical harm requires that a defendant also use or threaten to use force." *State v. Duncan*, 3d Dist. Logan No. 8-12-15, 2014-Ohio-2720, ¶ 11; *State v. Watson*, 154 Ohio App.3d 150, 2003-Ohio-4664, 796 N.E.2d 578, ¶ 20-21 (8th Dist.).

{¶35} The evidence presented, which was essentially uncontroverted, was that Williams threatened to hit Tran with a large bottle of alcohol while Williams was stealing items from the store. It may be argued that the evidence could have justified both an acquittal on the charged crime and a conviction on the lesser offense. Nonetheless, this court has held that "'when a conviction for the charged offense was supported by sufficient evidence, the failure to give a lesser-included offense instruction is harmless, since the result of the proceedings would not have been different but for the lack of the instruction.'" *State v. Hall*, 11th Dist. Lake Nos. 2019-L-027 and 2019-L-031, 2019-Ohio-4000, ¶ 26, citing *Jevnikar* at ¶ 19; *State v. Whitman*, 11th Dist. Ashtabula No. 2013-A-0031, 2013-Ohio-5822, ¶ 47. As fully outlined above, the evidence was sufficient to support a conviction for Robbery pursuant to (A)(2) and thus, there is no reason to conclude the outcome would have been different had a lesser-included instruction been given. Since there was sufficient evidence to support both Robbery and Improperly Handling Firearms as discussed above, it was proper to submit these to the jury.

{¶36} As to Williams' argument that the trial court failed to give a complicity instruction as to the Improperly Handling Firearms charge, the record demonstrates it did

12

instruct the jury in relation to complicity. Nonetheless, since the conviction is supported by the evidence with Williams acting as a principal, this issue is moot.

{¶37} The third assignment of error is without merit.

{¶38} In his fourth assignment of error, Williams argues that trial counsel was ineffective by failing to request a lesser included instruction for the Robbery offense given his foregoing argument that there was no testimony as to the specific nature of the threat of violence and the conduct would more properly fit the requirements for a third-degree felony.

{¶39} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶ 10.

{¶40} "[T]he Supreme Court of Ohio has stated that the '[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel.'" *State v. McEndree*, 2020-Ohio-4526, 159 N.E.3d 311,

13

¶ 86 (11th Dist.), citing *State v. Griffie*, 74 Ohio St.3d 332, 333, 658 N.E.2d 764 (1996); *see also State v. Powell*, 11th Dist. Lake No. 2007-L-187, 2009-Ohio-2822, ¶ 90.  If, as Williams argues, the sole conduct warranting a robbery charge was the pushing of Tran and this constitutes a third-degree felony, not requesting a lesser-included instruction would potentially lead to an acquittal rather than a conviction for a serious felony.  We do not find that counsel was ineffective in failing to request such an instruction.

{¶41}  Furthermore, as discussed above, any error resulting from failing to request a lesser-included instruction would be harmless and nonprejudicial since the jury convicted Williams of the second-degree felony Robbery and the evidence supported that conviction.  *Hall*, 2019-Ohio-4000, at ¶ 26.

{¶42}  The fourth assignment of error is without merit.

{¶43} For the foregoing reasons, Williams' convictions for Robbery and Improperly Handling Firearms in a Motor Vehicle are affirmed.  Costs to be taxed against appellant.

MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

14